CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

July 08, 2026
LAURA A. AUSTIN, CLERK
BY: s/ KELLY BROWN
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Criminal Action No.: 1:26-CR-00001** |
| **v.** | ) | |
| | ) | |
| **NARATIO OMAR BOWLES,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

On June 18, 2026, this Court sentenced Defendant Naratio Omar Bowles to 18 months imprisonment for bank fraud. At sentencing, the parties disputed the appropriate amount of forfeiture, which is mandatory in this case. I ruled on the forfeiture issue from the bench and ordered that Bowles forfeit $9,826.97. This memorandum opinion provides the reasoning behind that ruling.

### I.   Background

On October 11, 2023, the Town of Marion sent a vendor a check for $49,265.67. Dkt. 38 ¶ 10. The check was intercepted, and the payee information was altered to show Bowles's name and address. Dkt. 28 at 1. On October 18, 2023, Bowles presented that check from the Town of Marion to Apple Federal Credit Union for deposit into his bank account. *Id*. Bowles spent $9,826.97 of the fraudulently obtained $49,265.67 before the bank issued a stop payment order and recouped the remaining amount on October 26, 2023. Dkt. 38 ¶ 10; Dkt. 3-1 ¶ 6.

On January 13, 2026, Bowles was indicted on one count theft or receipt of stolen mail mater, in violation of 18 U.S.C. § 1708, and one count bank fraud, in violation of 18 U.S.C. § 1344. Dkt. 10. Pursuant to 18 U.S.C. § 982(a)(2)(A), the Indictment included a notice of forfeiture for $49,265.67. *Id*. The Notice also indicated that if the forfeiture amount could not be located, the Government would seek to forfeit substitute assets up to the remaining value of the $49,265.67 forfeiture money judgment, pursuant to 21 U.S.C. § 853(p). *Id*. at 2–3.

On March 6, 2026, Bowles pled guilty to bank fraud. Dkt. 30. Before sentencing, the Government renewed its request that the Court enter an order of forfeiture in the amount of $49,265.67. Dkt. 39. Bowles objected to the forfeiture amount, arguing that he never obtained the full $49,265.67 because the bank recouped most of that amount. Dkt. 41. Bowles argued that the appropriate forfeiture amount was $9,826.97—the amount Bowles spent before the bank stopped payment on the check. *Id*. at 2. At the sentencing hearing, the Government argued that Bowles had control of the full $49,265.67 for 8 days, during which time the writer of the check suffered. Further, the Government argued that forfeiture is based on illegal activity, not the loss amount, so entry of a forfeiture money judgment for the full amount of the fraudulent check is appropriate. I ruled from the bench and ordered that Bowles forfeit $9,826.97 and pay restitution in the same amount as part of his sentence.

## II.     Discussion

Following conviction for bank fraud in violation of 18 U.S.C. § 1344, the Court must order that the defendant forfeit "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." 18 U.S.C. § 982(a)(2)(A). Where applicable, forfeiture is mandatory. 28 U.S.C. § 2461(c). After a guilty verdict, the Court must determine the appropriate amount of the money judgment forfeiture order. Fed. R. Crim. P. 32.2(b)(1)(A). The Government bears the burden of establishing the amount of forfeiture by a preponderance of the evidence. *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010). Criminal forfeiture is imposed as part of the defendant's sentence. *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003).

Under 18 U.S.C. § 982(b)(1), criminal forfeiture orders are governed by the procedures set forth in 21 U.S.C. § 853. *United States v. Chittenden*, 896 F.3d 633, 635 n.2 (4th Cir. 2018) (citing *United States v. Cox*, 575 F.3d 352, 355 n.2 (4th Cir. 2009)). Under that provision, "[a]ll

right, title, and interest in property [subject to forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States." 21 U.S.C. 853(c); *see also United States v. Lamin*, No. 21-4547, 2022 WL 16757925, at *2 (4th Cir. Nov. 8, 2022) ("To establish whether a defendant's illicit gains are subject to forfeiture, the district court must ask whether the defendant had 'dominion and control' over the money at issue." (citing *In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005)).

In this case, pursuant to § 853(c), title to the full $49,265.67 vested in the United States when Bowles deposited the fraudulent check. There is no dispute that Bowles had control over that amount at the time of deposit until the bank issued a stop payment order. However, at the time of sentencing, Bowles had no assets, liabilities, or income. Dkt. 38 ¶ 59. He was not in possession of the check amount because he spent $9,826.97 and the bank recouped the remaining $39,438.70 after issuing a stop payment order. *Id*. ¶ 10. It is axiomatic that a defendant cannot forfeit property he does not possess. While the Court must order forfeiture of any property "derived from" the proceeds of the offense, the Government did not assert that Bowles is in possession of any such derivative property. Instead, the Government sought forfeiture of substitute property up to the value of the fraudulent check.

Under 21 U.S.C. § 853(p), the Court must order forfeiture of substitute property "if any property [subject to forfeiture], as a result of any act or omission by the defendant" is unavailable for forfeiture because the property cannot be located, has been transferred or sold to a third party, has been placed beyond the court's jurisdiction, has diminished in value, or has been comingled with other property. Forfeiture is not limited to assets in the defendant's possession at the time of conviction because "[t]o conclude otherwise would enable wrongdoers to avoid forfeiture merely

3

by spending their illegitimate gains prior to sentencing." *United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014) (citations omitted).

As to the $9,826.97 Bowles spent, forfeiture of substitute assets is clearly appropriate. That money was "transferred or sold to, or deposited with, a third party" by Bowles's "act or omission" when he spent it. 21 U.S.C. § 853(p)(1)(B). Therefore, the Court ordered forfeiture of substitute assets up to the value of $9,826.97.

However, applying the plain text of § 853(p), forfeiture of substitute assets up to the value of the recouped $39,438.70 is not appropriate. The Court must order forfeiture of substitute assets only when forfeit property is unavailable "as a result of any act or omission *by the defendant*." 21 U.S.C. § 853(p) (emphasis added); *see also Chittenden*, 896 F.3d at 638 ("This language [of 21 U.S.C. § 853(p)] . . . 'authorized the Government to confiscate assets only from the defendant who initially acquired the property *and who bears responsibility for its dissipation*.'" (quoting *Honeycutt v. United States*, 581 U.S. 443, 452 (2017) (emphasis added))). In this case, $39,438.70 of the $49,265.67 fraudulent check is unavailable because *the bank* stopped payment on the check and recouped that amount. That property is unavailable due to the bank's stop payment order. The Government did not and could not argue that the $39,438.70 is unavailable "as a result of any act or omission by [Bowles]." *See United States v. Dong*, 252 F. Supp. 3d 447, 458 ("[A] defendant must have a hand in the prohibited 'act or omission' to trigger section 853(p)(1)(A)."). Therefore, forfeiture of substitute property is not available as to the recouped $39,438.70.

Criminal forfeiture statutes "serve important governmental interests such as 'separating a criminal from his ill-gotten gains,' 'returning property, in full, to those wrongfully deprived or defrauded of it,' and 'lessening the economic power of criminal enterprises.'" *Honeycutt*, 581 U.S. at 447 (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629–30

(1989)). Unlike restitution, which compensates the victim of a crime, criminal forfeiture is punitive. *Blackman*, 746 F.3d at 143. Therefore, ordering both restitution and forfeiture in the same amounts "does not generally amount to double recovery." *Id*. (citing *United States v. McGinty*, 610 F.3d 1242, 1247 (10th Cir. 2010)). In this case, ordering forfeiture of substitute property up to $9,826.97, the amount Bowles dissipated, and restitution in the same amount serves the dual goals of forfeiture and restitution. To order forfeiture of substitute assets already reclaimed by the rightful owner would expand criminal forfeiture beyond its purpose of depriving the defendant of his ill-gotten gains.

### III.    Conclusion

Forfeiture of substitute assets is only appropriate when the forfeit property is unavailable due to the defendant's actions. In this case, although title to the full $49,265.67 vested in the United States at the time of the fraudulent deposit, $39,438.70 of that amount is unavailable for forfeiture due to the bank's actions. Therefore, forfeiture of substitute assets up to that amount is not available. Further, forfeiture of substitute property up to the value of value $9,826.97—the amount of the original fraudulent check that Bowles spent—punishes the criminal conduct and deprives Bowles of his ill-gotten gains. Forfeiture of substitute property up to the value of value $9,826.97 is appropriate in this case.

It is so **ORDERED**.

Entered:  July 8, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge